UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

STEVE BERNARD BOGARD,

                 Petitioner,              Case No. 2:20-cv-16

v.                                   Honorable Paul L. Maloney

CONNIE HORTON,

                 Respondent.

_____/

## OPINION

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, Rules Governing § 2254 Cases; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because it fails to raise a meritorious federal claim. The Court also will deny Petitioner's motion to stay the petition and hold it in abeyance while he exhausts an additional ground for relief (ECF No. 8).

## I.    Factual allegations

Petitioner Steve Bernard Bogard is incarcerated with the Michigan Department of Corrections at the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan. Following a jury trial in the Kent County Circuit Court, Petitioner was convicted of the following offenses: possession with intent to deliver less than 50 grams of cocaine, Mich. Comp. Laws § 333.7401(2)(a)(iv); being a felon in possession of a firearm (felon in possession), Mich. Comp. Laws § 750.224f; assault with a dangerous weapon, Mich. Comp. Laws § 750.82; and possession of a firearm during the commission of a felony (felony firearm), Mich. Comp. Laws § 750.227b. On February 23, 2017, the court sentenced Petitioner to respective prison terms of 2 to 40 years, 8 to 60 years, 2 to 15 years, and 2 years.

The following factual background is taken from the court of appeals opinion affirming Petitioner's convictions and sentences.

On September 20, 2016, Siad Brown called the police to report that someone had shot at him. When the police arrived, he emerged from a hiding place in some bushes and consented to the police searching his residence. The police knocked on the door, announced themselves, and entered. Inside, Bogard walked toward them from an area that another witness testified was near the basement. Bogard was searched. Although he was unarmed and had no drug paraphernalia on his person, he was carrying $1,660 in cash. The police searched the basement of the house and discovered 1.66 grams of cocaine and a loaded gun on some ductwork. They also searched Bogard's vehicle and discovered a digital scale and sandwich bags with the corner pieces torn out.

The prosecution's theory was that Bogard shot at Brown. In support, they presented testimony from Brown that Bogard pointed a gun at him, so he ran away. Brown stated that while he was running, he thought he heard gunshots. Brown's ex-girlfriend (who he was dating at the time) also testified that Bogard showed Brown the gun and pointed it at him. Based on the testimony that Bogard possessed the gun, had drug paraphernalia in his vehicle, and had a large sum of cash on his person, the prosecution also argued that the cocaine belonged to Bogard and that he had essentially stashed both the drugs and the gun after shooting at Brown but

before the police arrived. In his defense, Bogard testified that he never went into the basement. He also stated that he had a large sum of cash because he was going to get a money order for $1,000 to pay his mother's mortgage and that he was going to use $600 to pay his car insurance. Bogard also testified that other individuals used his vehicle and that he had not personally checked to see if anything out of the ordinary was in the vehicle before he used it. The jury convicted Bogard as indicated above.

(Mich. Ct. App. Op., ECF No. 1, PageID.19-20.)

Petitioner appealed his convictions and sentences to the Michigan Court of Appeals. The brief on appeal filed by Petitioner's attorney raised the first four grounds presented in this habeas petition. (Def.-Appellant's Br. on Appeal, ECF No. 1, PageID.51-73.) Petitioner filed a pro per supplemental brief raising the issue presented as Petitioner's fifth habeas ground. In an unpublished opinion issued on April 24, 2018, the court of appeals denied all claims and affirmed both the convictions and sentences.

Petitioner sought leave to appeal to the Michigan Supreme Court, raising the same five issues. The supreme court denied leave to appeal on December 4, 2018. (Mich. Order, ECF No. 1, PageID.27.)

On December 16, 2019, Petitioner timely filed his habeas corpus petition. The petition raises five grounds for relief, as follows:

I.      WHETHER THE TRIAL COURT ABUSED ITS DISCRETION IN RULING THAT THE PROSECUTION HAD SHOWN DUE DILIGENCE IN ATTEMPTING TO PROCURE THE ATTENDANCE OF A CRUCIAL WITNESS, WHOSE PRELIMINARY EXAMINATION TESTIMONY WAS [] READ TO THE JURY IN LIEU OF HIS LIVE TESTIMONY, THUS VIOLATING [PETITIONER'S] RIGHT TO CONFRONTATION.

II.     WHETHER THE PROSECUTOR IMP[RO]PERLY SHIFTED THE BURDEN OF PROOF DURING CLOSING AR[]GUMENT, CONTRARY TO THE FOURTEENTH AMENDMENT.

III.     WHETHER [PETITIONER'S] CONVICTION OF POSSESSION WITH INTENT TO DELIVER MUST BE VAC[A]TED DUE TO INSUFFICIENCY OF THE EVIDENCE.

IV.     WHETHER [PETITIONER] IS ENTITLED TO RESENTENCING BECAUSE HIS MINIMUM TERM WAS AN UNREASONABLE AND DISPROPORTIONATE SENTENCE.

V.     [PETITIONER] WAS DENIED THE RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL FOR HIS DEFENSE AS GUARANTEED BY THE UNITED STATES AND MICHIGAN CONSTITUTIONS . . . .

(Pet., ECF No. 1, PageID.5, 7, 9-10, 12.)  Petitioner also has filed a motion to stay the petition and hold his exhausted claims in abeyance while he exhausts a new claim of ineffective assistance of counsel (ECF No. 8), on the ground that defense counsel failed to investigate to discover evidence from an eyewitness that would call into question the credibility of the prosecution's principal witness.

## II.     AEDPA standard

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA).  The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law.  *Bell v. Cone*, 535 U.S. 685, 693-94 (2002).  An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."   28 U.S.C. § 2254(d).  This standard is "intentionally difficult to meet."  *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation omitted).

4

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Lopez v. Smith*, 574 U.S. 1, 4 (2014); *Marshall v. Rodgers*, 569 U.S. 58, 64 (2013); *Parker v. Matthews*, 567 U.S. 37, 48-49 (2012); *Williams*, 529 U.S. at 381-82; *Miller v. Straub*, 299 F.3d 570, 578-79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37-38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their

adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

## III.    Ground I:  Confrontation Clause

In his first habeas ground, Petitioner argues that the admission of the preliminary examination testimony of Siad Brown violated state evidentiary law, the state constitution, and the Confrontation Clause of the Sixth Amendment to the United States Constitution.

To the extent Petitioner challenges the admission of Brown's testimony under state evidentiary rules or the state constitution, his claim is not cognizable on habeas review. "[A] federal court may issue the writ to a state prisoner 'only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.'" *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (quoting 28 U.S.C. § 2254(a)). A habeas petition must "state facts that point to a 'real possibility of constitutional error.'" *Blackledge v. Allison*, 431 U.S. 63, 75 n.7 (1977) (quoting Advisory Committee Notes on Rule 4, Rules Governing Habeas Corpus Cases).

The federal courts have no power to intervene on the basis of a perceived error of state law. *Wilson*, 562 U.S. at 5; *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle v. McGuire*,

502 U.S. 62, 67-68 (1991); *Pulley v. Harris*, 465 U.S. 37, 41 (1984). The decision of the state courts on a state-law issue is binding on a federal court. *See Johnson v. United States*, 559 U.S. 133, 138 (2010) ("We are, however, bound by the Florida Supreme Court's interpretation of state law, including its determination of the elements . . . ."); *Wainwright v. Goode*, 464 U.S. 78, 84 (1983). The Sixth Circuit repeatedly has reiterated "'that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.'" *Stumpf v. Robinson*, 722 F.3d 739, 746 n.6 (6th Cir. 2013) (quoting *Bradshaw*, 546 U.S. at 76). *See also Thomas v. Stephenson*, 898 F.3d 693, 700 n.1 (6th Cir. 2018) (same). As a consequence, this Court may only consider that part of Petitioner's first habeas ground that challenges the admission of Brown's testimony under the Confrontation Clause.

The Confrontation Clause of the Sixth Amendment gives the accused the right "to be confronted with the witnesses against him." U.S. Const. amend. VI; *Pointer v. Texas*, 380 U.S. 400, 403-05 (1965) (applying the guarantee to the states through the Fourteenth Amendment). "The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." *Maryland v. Craig*, 497 U.S. 836, 845 (1990). The Confrontation Clause therefore prohibits the admission of an out-of-court testimonial statement at a criminal trial unless the witness is unavailable to testify and the defendant had a prior opportunity for cross-examination. *Crawford v. Washington*, 541 U.S. 36, 59 (2004).

The Michigan Court of Appeals addressed the issue, as follows:

> The admission of preliminary examination testimony at trial does not violate a defendant's right of confrontation if (1) the witness is unavailable to testify at trial, (2) the prosecution can demonstrate due diligence in trying to produce the absent witness, and (3) the testimony meets satisfactory indicia of reliability.

7

*People v Bean*, 457 Mich 677, 682-683; 580 NW2d 390 (1998). In accordance with MRE 804(a)(5), the test for due diligence "is one of reasonableness and depends on the facts and circumstances of each case, i.e., whether diligent good-faith efforts were made to procure the testimony, not whether more stringent efforts would have produced it." *Id.* at 684.

Here, the record demonstrates that Brown never gave the police the impression that he would not show up for trial, and instead he was cooperative at the preliminary examination. Additionally, the process server for the Grand Rapids Police Department attempted to serve Brown at his last known address multiple times but was unsuccessful. An officer then contacted Brown's ex-girlfriend, who informed him that the two had been evicted from their residence and had ended their relationship. The ex-girlfriend told the officer that she did not know where Brown was located; however, at trial, she admitted that she spoke with Brown daily and that he was in Atlanta, Georgia. When asked if she told the police about Brown living in Atlanta, she stated she did not. On appeal, Bogard argues that Brown was easily located through the ex-girlfriend, yet the record does not support this statement because the ex-girlfriend failed to disclose this information to law enforcement before the trial. Moreover, although there was evidence that Brown had been on probation, he had been released and no other forwarding address was provided. Lastly, the phone number for Brown did not work, and a search of LEIN turned up nothing on him. Thus, based on the record before the court, we conclude that the trial court did not err by finding the prosecution exercised due diligence to produce Brown at trial. Although Bogard argues that the prosecution should have made additional efforts, due diligence requires the prosecution to "do everything reasonable, not everything possible, to obtain the presence of the witness." *People v Eccles*, 260 Mich App 379, 391; 677 NW2d 76 (2004). Moreover, because Brown was unavailable under MRE 804(a)(5), his preliminary examination testimony was admissible under MRE 804(b)(1) because Bogard had a prior opportunity and similar motive to develop the witness's testimony on cross-examination. See *Bean*, 457 Mich at 682-684.

(Mich. Ct. App. Op., ECF No. 1, PageID.20-21.) While the Michigan Court of Appeals did not cite to United States Supreme Court precedent or apply a standard that perfectly parallels the *Crawford* standard, the court of appeals did consider the factors identified by the Supreme Court in considering such challenges.

Petitioner does not dispute any of the facts recited by the court of appeals. As discussed previously, this Court presumes the correctness of state-court factual findings, and Petitioner bears the burden of overcoming that presumption by clear and convincing evidence. *See*

28 U.S.C. § 2254(e)(1); *Sumner*, 449 U.S. at 546; *Smith*, 888 F.2d at 407. Here, Petitioner simply argues that the court of appeals wrongly concluded from those facts that the prosecution had demonstrated reasonable diligence in seeking Brown's appearance at trial.

In the context of review under the AEDPA, the Supreme Court has cautioned against disturbing a state court's reasonable conclusion regarding unavailability:

> [W]hen a witness disappears before trial, it is always possible to think of additional steps that the prosecution might have taken to secure the witness' presence, *see* [*Ohio v. Roberts*, 448 U.S. 56, 75 (1980)], but the Sixth Amendment does not require the prosecution to exhaust every avenue of inquiry, no matter how unpromising. And, more to the point, the deferential standard of review set out in 28 U.S.C. § 2254(d) does not permit a federal court to overturn a state court's decision on the question of unavailability merely because the federal court identifies additional steps that might have) been taken. Under AEDPA, if the state-court decision was reasonable, it cannot be disturbed.

*Hardy v. Cross*, 565 U.S. 65, 71-72 (2011).

Taking as true the facts recited in the court of appeals decision, the court of appeals reasonably determined that Brown was unavailable, and that the prosecution had exercised reasonable diligence in attempting to locate him for trial. This Court accepts as true that the prosecution had no reason to believe that Brown would not appear at trial until it attempted to serve a trial subpoena, because Brown had until that time been fully cooperative in the prosecution. The Court also accepts as true that the police attempted multiple times to serve Brown at his last known address; that they contacted Brown's ex-girlfriend, but she told them she had broken up with Brown and did not know where he was; that they checked with Brown's probation officer in an attempt to find a forwarding address; and that they checked the LIEN system for any record of Brown's location. Under the circumstances found by the state court, it is difficult to identify what else the officers could have done. Neither the prosecutor nor police had knowledge that Brown's ex-girlfriend had lied to them about knowing where Brown was and about her daily telephone

contact with Brown until she testified at trial. At that point, Brown was located in Georgia, outside the jurisdiction of the trial court, and the prosecutor had no time to obtain Brown's presence through any legal means. On these facts, the state court reasonably determined that the prosecution had exercised due diligence in obtaining Brown's presence and that Brown was unavailable within the meaning of the Confrontation Clause.

Petitioner does not now and did not in the state courts contest that he had an opportunity to question Brown at the preliminary examination. Nor does Petitioner contend that his opportunity for cross-examination was insufficient. However, even had he intended to raise such a claim, Petitioner would not be entitled to habeas relief on that issue under the current state of Supreme Court precedent.

The Sixth Circuit has noted that there exists "some question whether a preliminary hearing necessarily offers an adequate prior opportunity for cross-examination for Confrontation Clause purposes." *Al-Timimi v. Jackson*, 379 F. App'x 435, 437-38 (6th Cir. 2010) (citing, *inter alia, Vasquez v. Jones*, 496 F.3d 564, 577 (6th Cir. 2007) (doubting whether "the opportunity to question a witness at a preliminary examination hearing satisfies the pre-*Crawford* understanding of the Confrontation Clause's guarantee of an opportunity for effective cross-examination") (internal quotation marks omitted)). But the Supreme Court has never held that a defendant is denied his rights under the Confrontation Clause when a witness is unavailable at trial and the court admits the witness's preliminary examination testimony. *Id.* at 438 (recognizing that some language to the contrary in *Barber v. Page*, 390 U.S. 719, 725 (1968), was merely dicta and in no event held that all opportunities for cross-examination at a preliminary exam were insufficient to meet the requirements of the Confrontation Clause). As a result, in the context of a federal court

sitting on habeas review, the Sixth Circuit has concluded that a state court's determination that testimony from the preliminary examination was properly admitted was not an unreasonable application of clearly established Supreme Court precedent. *Id.*, at 438-40; *see also Williams v. Bauman*, 759 F.3d 630, 636 (6th Cir. 2014) (citing *Al-Timimi* with approval and upholding on habeas review the admission of testimony from the petitioner's own preliminary examination).

For these reasons, Petitioner fails to demonstrate that the state-court's decision either rested on an unreasonable determination of the facts or was contrary to, or an unreasonable application of, clearly established Supreme Court precedent. He therefore is not entitled to relief on his first habeas ground.

## IV.    Ground II:  Prosecutorial Misconduct

As he did in the state appellate courts, Petitioner next argues that the prosecutor committed misconduct by shifting the burden of proof during closing argument, in violation of the Fourteenth Amendment.

The Michigan Court of Appeals considered and rejected Petitioner's constitutional claim:

> Bogard next argues that the prosecutor improperly shifted the burden of proof during her closing argument. To review a claim of prosecutorial misconduct, this Court must examine the challenged remarks in context to determine whether the defendant received a fair and impartial trial. *People v Aldrich*, 246 Mich App 101, 110; 631 NW2d 67 (2001). However, because Bogard failed to preserve this issue with a timely objection, our review is for plain error affecting Bogard's substantial rights. See *id.* Additionally, "[n]o error requiring reversal will be found if the prejudicial effect of the prosecutor's comments could have been cured by a timely instruction." *People v Watson*, 245 Mich App 572, 586; 629 NW2d 411 (2001) (quotation marks and citation omitted). . . .
>
> Bogard contends that the following argument by the prosecutor improperly shifted the burden of proof:

So let's go to count one. The possession with intent to deliver cocaine. We know [an officer] finds, in Exhibit 13, there's a photograph of it. The handgun and the baggie of rocks of the crack cocaine. And we know that he finds it in the basement. And—well, how do we know the defendant put those there? For one thing, zero evidence that anybody else put it there. Zero evidence that [Brown] used drugs, possessed guns, went down there at any point that day. Zero evidence, in fact an outright denial from [the ex-girlfriend], that she's involved in any kind of drug use or guns. An outright denial even though she's not here to testify, but [the ex-girlfriend] says, no [her friend] wasn't involved in any of that stuff either.

We disagree. "Prosecutors are typically afforded great latitude regarding their arguments and conduct at trial." *People v Unger*, 278 Mich App 210, 236; 749 NW2d 272 (2008). "They are generally free to argue the evidence and all reasonable inferences from the evidence as it relates to their theory of the case." *Id.* The challenged comments reflect the prosecutor's recitation of the circumstantial evidence linking Bogard to the firearm and drugs located in the basement. And, although the prosecutor commented on the lack of evidence linking others to the crime, that was not improper given that the defense theory was that the items found by the police belonged to someone other than Bogard. Consequently, we conclude that there was no prosecutorial misconduct.

(Mich. Ct. App. Op., ECF No. 1, PageID.21-22.)

In order for a petitioner to be entitled to habeas relief on the basis of prosecutorial misconduct, the petitioner must demonstrate that the prosecutor's improper conduct "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). "[T]he touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982)). In evaluating the impact of the prosecutor's misconduct, a court must consider the extent to which the claimed misconduct tended to mislead the jury or prejudice the petitioner, whether it was isolated or extensive, and whether the claimed misconduct was deliberate or accidental. *See United States v. Young*, 470 U.S. 1, 11-12 (1985). The court also must consider the strength of the overall proof establishing guilt, whether the conduct was objected to by counsel and whether a curative instruction was given by the court.

12

*See id.* at 12-13; *Darden*, 477 U.S. at 181-82; *Donnelly*, 416 U.S. at 646-47; *Berger v. United States*, 295 U.S. 78, 84-85 (1935).

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004) (citing *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)). Indeed, "[t]he Supreme Court has clearly indicated that the state courts have substantial breathing room when considering prosecutorial misconduct claims because 'constitutional line drawing [in prosecutorial misconduct cases] is necessarily imprecise.'" *Slagle v. Bagley*, 457 F.3d 501, 516 (6th Cir. 2006) (quoting *Donnelly*, 416 U.S. at 645 (1974)). Thus, in order to obtain habeas relief on a prosecutorial misconduct claim, a habeas petitioner must show that the state court's rejection of his prosecutorial misconduct claim "'was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Parker v. Matthews*, 567 U.S. 37, 47 (2012) (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).

In the instant case, although the court of appeals did not cite United States Supreme Court precedent, the analysis it applied was fully consistent with the Supreme Court standard. The court of appeals looked to the whole of the circumstances in determining whether the prosecutor's conduct deprived Petitioner of a fair trial. The court found that Petitioner had defended the case by arguing and testifying that the firearm and drugs were located in the basement and belonged to someone else. This factual statement about the substance of Petitioner's defense is both consistent with the facts recited in Petitioner's brief on appeal to the Michigan Court of Appeals (Def.-Appellant's Br. on Appeal, ECF No. 1, PageID.58-59) and entitled to a presumption of correctness. *See* 28 U.S.C. § 2254(e)(1); *Sumner*, 449 U.S. at 546; *Smith*, 888 F.2d at 407. The court of appeals

therefore properly applied the well-established proposition that a prosecutor "has wide latitude during closing argument to respond to the defense's strategies, evidence and arguments." *Wogenstahl v. Mitchell*, 668 F.3d 307, 329 (6th Cir. 2012) (quoting *Bedford v. Collins*, 567 F.3d 225, 233 (6th Cir. 2009) (internal quotation marks omitted)); *see also Clarke v. Warren*, 556 F. App'x 396, 408 (6th Cir. 2014). A prosecutor is not limited to simply recounting the evidence during closing argument but may argue reasonable inferences from the evidence. *Byrd v. Collins*, 209 F.3d 486, 535 (6th Cir. 2000); *see also Young*, 470 U.S. at 8 n.5 (acknowledging as a useful guideline the American Bar Association Standard: "The prosecutor may argue all reasonable inferences from the evidence.").

Moreover, the Sixth Circuit has rejected claims of prosecutorial misconduct based on an alleged shifting of the burden of proof arising out of a prosecutor's suggestion that the evidence does not support the defendant's theory. *See United States v. Henry*, 545 F.3d 367, 382 (6th Cir. 2008) (addressing the following prosecutor's statement: "Ladies and gentlemen, I guess that sort of gets back to the whole point that I said in opening statement . . . listen to the testimony of the witnesses, consider how it came in, and consider if there is any way that the defense's theory could hold any water."); *see also United States v. Johnson*, 583 F. App'x 503, 508 (6th Cir. 2014) (finding that, where the defendant argued the prosecutor had failed to call a witness that would have been favorable to the defense, the prosecutor did not shift the burden of proof by commenting that the defendant also had not called the witness); *Perkins v. McKee*, 411 F. App'x 822, (6th Cir. 2011) (finding no shifting of the burden of proof when prosecutor commented that the petitioner, while claiming alibi, had not produced the witness who could corroborate that alibi); *Traylor v. Price*, 239 F. App'x 235, (6th Cir. 2007) (holding that, where a defendant testifies at trial and

advances an alternative theory of the case that would exonerate him, prosecutorial comments on the validity of the theory do not shift the burden of proof).

Under the undisputed facts and the totality of circumstances, Petitioner fails to show that the prosecutor's comments amounted to prosecutorial misconduct, much less to show that the state court's resolution of his prosecutorial-misconduct claim "'was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement'" *Parker*, 567 U.S. at 47 (quoting *Harrington,* 562 U.S. at 103).

## V.      Ground III:  Sufficiency of the Evidence

Petitioner argues that the prosecution introduced insufficient evidence that he committed the offense of possession with intent to deliver less than 50 grams of cocaine.  In making his argument in the Michigan Court of Appeals, appellate counsel conceded that the evidence was sufficient to establish the elements of the remaining offenses:   felonious assault, felon in possession, and felony firearm.  (*See* Def.-Appellant's Br. on Appeal, ECF No. 1, PageID.67.)

A § 2254 challenge to the sufficiency of the evidence is governed by the standard set forth by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), which is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  This standard of review recognizes the trier of fact's responsibility to resolve reasonable conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.  *Id.*  Issues of credibility may not be reviewed by the habeas court under this standard.  *See Herrera v. Collins*, 506 U.S. 390, 401-02 (1993).  Rather, the habeas court is required to examine the evidence supporting the conviction, in the light most favorable to the prosecution, with specific

reference to the elements of the crime as established by state law. *Jackson*, 443 U.S. at 324 n.16; *Allen v. Redman*, 858 F.2d 1194, 1196-97 (6th Cir. 1988).

The *Jackson v. Virginia* standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. Moreover, because both the *Jackson* standard and AEDPA apply to Petitioner's claims, "the law commands deference at two levels in this case: First, deference should be given to the trier-of-fact's verdict, as contemplated by *Jackson*; second, deference should be given to the Michigan Court of Appeals' consideration of the trier-of-fact's verdict, as dictated by AEDPA." *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008). This standard erects "'a nearly insurmountable hurdle'" for petitioners who seek habeas relief on sufficiency-of-the-evidence grounds. *Davis v. Lafler*, 658 F.3d 525, 534 (6th Cir. 2008) (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)).

The Michigan Court of Appeals readily disposed of Petitioner's third ground for relief:

> Bogard next argues that there was insufficient evidence to support his conviction for possession with intent to deliver. Challenges to the sufficiency of the evidence are reviewed de novo, with the evidence viewed in the light most favorable to the prosecution. *People v Bennett*, 290 Mich App 465, 471; 802 NW2d 627 (2010). . . .
>
> The elements of possession with intent to deliver cocaine in an amount less than 50 grams are as follows: "(1) that the recovered substance is cocaine, (2) that the cocaine is in a mixture weighing less than fifty grams, (3) that defendant was not authorized to possess the substance, and (4) that defendant knowingly possessed the cocaine with intent to deliver." *People v Wolfe*, 440 Mich 508, 516-517; 489 NW2d 748 (1992), amended 441 Mich 1201 (1992). Bogard only challenges the sufficiency of the evidence that he possessed the cocaine.
>
> Here, an officer found a handgun and a 1.66 grams of cocaine in Brown's basement. The cocaine was on top of the gun. Bogard was the only individual identified as possessing a handgun, but when the police arrived he did not have a

gun on him. Instead, he was moving toward the police from the direction of the basement. That evidence allows for a reasonable inference that Bogard placed the gun in the basement before the police arrived. Because the cocaine was on top of the gun, it also allows for an inference that he was connected to the cocaine. Additionally, there was other testimony and evidence tying Bogard to the drugs. Namely, he had a large sum of cash on him, which can be indicative of the sale of illegal drugs, and he had drug paraphernalia in his vehicle.[1] We note that, although Bogard claimed he was paying bills with the money, it is important to note that "[t]his Court will not interfere with the trier of fact's role of determining the weight of the evidence or the credibility of witnesses." *People v Williams*, 268 Mich App 416, 419; 707 NW2d 624 (2005). Accordingly, viewed in the light most favorable to the prosecution, there was sufficient evidence to establish that Bogard had possession of the cocaine in the basement.

[1] Two police witnesses explained that drugs are inserted into the corner of sandwich bags and then are twisted off when sold. In addition, a digital scale can be used to weigh cocaine before it is sold.

(Mich. Ct. App. Op., ECF No. 1, PageID.22.) Although the court of appeals did not recite the full *Jackson* standard, it properly considered the evidence in the light most favorable to the prosecution and measured that evidence against the elements of the offense. Thus, the court's analysis was fully consistent with the federal constitutional standard. Moreover, the court of appeals drew its standard of review from *People v Wolfe*, 489 NW2d 748 (1992), which expressly articulates the *Jackson* standard. *Id.* at 751.

As discussed above in part III, it is the prerogative of the state to define the elements of the crime and that definition binds the federal courts. *See Johnson*, 559 U.S. at 138; *Jackson*, 443 U.S. at 324 n.16 ("The respondents have suggested that this constitutional standard will invite intrusions upon the power of the States to define criminal offenses. Quite to the contrary, the standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law."). As a consequence, the state court's recitation of the elements of the offense is binding on this Court.

On review, the state court's determination of the sufficiency question was patently reasonable. As the court observed, police witnesses testified that Petitioner appeared to be coming from the basement, where 1.66 grams of cocaine were found. The drugs were found with the gun—indeed, on top of the gun. Petitioner conceded in his appeal brief that the evidence was sufficient for the jury to find that he possessed the gun for purposes of the other offenses. It is difficult to imagine how the evidence could have been sufficient to support claims that Petitioner possessed the gun while not being sufficient to support the inference that it was Petitioner who knowingly possessed the drugs, given their co-location and the timing of the events in this case. Moreover, the prosecution introduced evidence that Petitioner had drug paraphernalia in his vehicle and that he had $1,600 in cash in his pockets. From this evidence a reasonable jury could infer that Petitioner was guilty of all elements of the offense.

Petitioner therefore fails to demonstrate that the evidence was insufficient to support his conviction for possession with intent to distribute. And he utterly fails to overcome the double deference owed to the state-court determination of the issue.

## VI.  Ground IV:  Unreasonable and Disproportionate Sentence

Petitioner argues that his minimum term of sentence for the felon-in-possession conviction was unreasonable. Petitioner argued in the state courts that his sentence of 14 to 58 months was disproportionate to his offense under *People v. Milbourn*, 461 N.W.2d. 1 (Mich. 1990), and that the trial court unreasonably departed from the discretionary sentencing guidelines under *People v. Lockridge*, 870 N.W. 2d 502 (Mich. 2015), and *People v. Steanhouse*, 902 N.W.2d 327 (Mich. 2017). However, in his brief before the Michigan appellate courts, Petitioner also made a conclusory argument that the sentence violated the Fourth, Eighth and Fourteenth

Amendments. In support of his habeas petition, Petitioner relies on the briefs filed in the state courts.

To the extent that he intends to suggest that his sentence was disproportionate under *Milbourn* or unreasonable under *Steanhouse*, Petitioner fails to raise a cognizable habeas claim. In *Milbourn*, the Michigan Supreme Court held that a sentencing court must exercise its discretion within the bounds of Michigan's legislatively prescribed sentence range and pursuant to the intent of Michigan's legislative scheme of dispensing punishment according to the nature of the offense and the background of the offender. *Milbourn*, 461 N.W.2d at 9-10; *People v. Babcock*, 666 N.W.2d 231, 236 (Mich. 2003). Nearly three decades later, in *Steanhouse*, Michigan Supreme Court held that a sentencing court's departure from the sentencing guidelines is unreasonable if the court abused its discretion. *Steanhouse*, 902 N.W.2d at 335. The proper test for determining whether the sentencing court abused its discretion, it held, is found in *Milbourn*'s proportionality analysis. *Id.* In other words, a sentence departing from the guidelines is unreasonable if it is disproportionate. Clarifying its holding, the *Steanhouse* court expressly rejected adopting factors used by the federal courts. *Id.* It is plain that *Milbourn*, and thus *Steanhouse*, were decided under state, not federal, principles. *See Lunsford v. Hofbauer*, No. 94-2128, 1995 WL 236677, at *2 (6th Cir. Apr. 21, 1995); *Atkins v. Overton*, 843 F. Supp. 258, 260 (E.D. Mich. 1994). As previously discussed, a federal court may grant habeas relief solely on the basis of federal law and has no power to intervene on the basis of a perceived error of state law. *See Wilson*, 562 U.S. at 5; *Bradshaw*, 546 U.S. at 76; *Pulley*, 465 U.S. at 41. Thus, Petitioner's claim based on *Milbourn* and *Steanhouse* is not cognizable in a habeas corpus action.

With respect to Petitioner's Eighth Amendment claim, the United States Constitution does not require strict proportionality between a crime and its punishment. *Harmelin v. Michigan*, 501 U.S. 957, 965 (1991); *United States v. Marks*, 209 F.3d 577, 583 (6th Cir. 2000). "Consequently, only an extreme disparity between crime and sentence offends the Eighth Amendment." *Marks*, 209 F.3d at 583; *see also Lockyer v. Andrade*, 538 U.S. 63, 77 (2003) (gross disproportionality principle applies only in the extraordinary case); *Ewing v. California*, 538 U.S. 11, 36 (2003) (principle applies only in "'the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality'") (quoting *Rummel v. Estelle*, 445 U.S. 263, 285 (1980)). A sentence that falls within the maximum penalty authorized by statute "generally does not constitute 'cruel and unusual punishment.'" *Austin v. Jackson*, 213 F.3d 298, 302 (6th Cir. 2000) (quoting *United States v. Organek*, 65 F.3d 60, 62 (6th Cir. 1995)). Ordinarily, "[f]ederal courts will not engage in a proportionality analysis except in cases where the penalty imposed is death or life in prison without possibility of parole." *United States v. Thomas*, 49 F.3d 253, 261 (6th Cir. 1995). Petitioner was not sentenced to death or life in prison without the possibility of parole, and his sentence falls within the maximum penalty under state law. Petitioner's sentence therefore does not present the extraordinary case that runs afoul of the Eighth Amendment's ban on cruel and unusual punishment.

Petitioner also fails to demonstrate a due process violation. A sentence may violate due process if it is based upon material "misinformation of constitutional magnitude." *Roberts v. United States,* 445 U.S. 552, 556 (1980); *see also United States v. Tucker,* 404 U.S. 443, 447 (1972); *Townsend v. Burke,* 334 U.S. 736, 741 (1948). To prevail on such a claim, the petitioner must show (1) that the information before the sentencing court was materially false, and (2) that

the court relied on the false information in imposing the sentence. *Tucker*, 404 U.S. at 447; *United States v. Stevens,* 851 F.2d 140, 143 (6th Cir. 1988); *United States v. Polselli*, 747 F.2d 356, 358 (6th Cir. 1984). A sentencing court demonstrates actual reliance on misinformation when the court gives "explicit attention" to it, "found[s]" its sentence "at least in part" on it, or gives "specific consideration" to the information before imposing sentence. *Tucker*, 404 U.S. at 444, 447.

Petitioner does not identify any facts found by the court at sentencing that were either materially false or based on false information. He therefore fails to demonstrate that his sentence violated due process. *Tucker*, 404 U.S. at 447; *United States v. Lanning*, 633 F.3d 469, 477 (6th Cir. 2011) (rejecting due process claim where the petitioner failed to point to specific inaccurate information relied upon by the court).

For these reasons, the state-court's rejection of Petitioner's sentencing claim was not based on an unreasonable determination of the facts and was neither contrary to nor an unreasonable application of established Supreme Court precedent. 28 U.S.C. § 2254(d).

## VII.    Ground V:  Ineffective Assistance of Trial Counsel

In his fifth ground for habeas relief, Petitioner challenges the effectiveness of his trial attorney in a variety of ways. With respect to Petitioner's previously exhausted ineffective-assistance claims, Petitioner incorporates by reference the arguments he presented in his application for leave to appeal to the Michigan Supreme Court. There, Petitioner argued, as follows:

> The Court of Appeals errored in its decision denying Defendant-Appellant's ineffective assistance of counsel claim. The issue raises a legal principle which is very important to Michigan law. Defendant-Appellant addressed in his supplemental Standard 4 brief to the Court of Appeals an array of deficient performances on behalf of his trial counsel. In Defendant-Appellant's <u>Discussion</u>, he referred to[:]  failure to prepare, failure to preserve a defense theory by not filing

the required notice, failure to seek suppression of illegally seized evidence, failure to file pre-trial motions, and failure to file for a new trial.

Moreover, because Defendant-Appellant inartfully detailed with accuracy these claims within the issue, the Court of Appeals concludes it will not consider the claim. Clearly, Defendant-Appellant informed the Court of Appeals Panel in his brief that the core of his claims would not be found on the record. According to the competent courts of the State of Michigan, when a lay person in the law attempts to address a court the issue raised must be liberally construed. As such, the Court of Appeals Panel in its inherent powers should have remanded this issue back to the trial court to have a testimonial record developed so the question concerning trial counsel's effectiveness can be properly evaluated.

Defendant-Appellant cited the relevant case law supporting various claims within the issue raised. See, People v. Hoag, 460 Mich. 1 (1999); People v. Johnson, 451 Mich. 115 (1996); People v. Ginther, 390 Mich. 436 (1973); St[r]ickland v. Washington, 466 U.S. 668 (1984); People v. Pickens, 446 Mich. 298 (1994); People v. Garcia[,] 398 Mich. 250 (1976); and People v. Degarffenreid, 19 Mich. App. 702 (1969).

This Court should be persuaded to grant leave, send this issue back to the trial court for a hearing to develop[] a record as to the exact motions trial counsel refused to investigate as well as the relevant defenses available and the investigation trial counsel took to conclude motions and further available defenses were not relevant to defendant-Appellant's case.

(Appl. for Lv. to Appeal to Mich. Ct., ECF No. 1, PageID.45-46.)

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. *Id.* at 687. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350

U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

Moreover, as the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential. *Harrington*, 562 U.S. at 105 (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 571 U.S. 12, 13 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011); *Premo v. Moore*, 562 U.S. 115, 122 (2011). In those circumstances, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740-41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . .") (citing *Harrington*, 562 U.S. at 102).

The Michigan Court of Appeals rejected Petitioner's claim of ineffective assistance of counsel:

> Finally, in a Standard 4 brief filed pursuant to Michigan Supreme Court Administrative Order 2004-6, Bogard argues that his trial lawyer provided ineffective assistance. "When no *Ginther*[2] hearing has been conducted, our review of the defendant's claim of ineffective assistance of counsel is limited to mistakes that are apparent on the record." *People v Mack*, 265 Mich App 122, 125; 695 NW2d 342 (2005). . . .
>
> To demonstrate ineffective assistance, a defendant must show that his lawyer's performance was deficient and that it prejudiced the defense. *People v*

23

*Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001). A defendant's lawyer is presumed effective and the defendant bears the heavy burden of proving otherwise. *People v Solmonson*, 261 Mich App 657, 663; 683 NW2d 761 (2004).

Bogard first argues that his lawyer failed to prepare appropriately for his trial. More specifically, he contends that his lawyer failed to conduct a background investigation into the prosecution's case-in-chief. However, there is no evidence on the record supporting a finding that Bogard's lawyer failed to conduct a background investigation or was otherwise unprepared for trial. As a result, Bogard has failed to meet his burden of showing that his lawyer's performance was deficient. Moreover, even assuming arguendo that Bogard's lawyer's performance was deficient, given that there is no indication of what Bogard's lawyer would have discovered if he had conducted a more thorough background investigation, we cannot conclude that the alleged error would have affected the outcome of the trial.

Next, Bogard argues that he was prejudiced by his lawyer's failure to challenge the legality of his arrest by seeking suppression of illegally seized evidence. Bogard states that his lawyer failed to move for suppression of the handgun and cocaine, as well as the circumstantial evidence of sandwich baggies with the corner pieces torn out and a digital scale. Failing to file a suppression motion is not per se ineffective assistance; a defendant must still demonstrate that his lawyer's performance was objectively unreasonable and that "but for" that deficient performance, the outcome of the trial would have been different. *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). Bogard fails to provide any support for his contention that the search and seizure of the evidence was illegal. He likewise fails to provide any support for his contention that his arrest was illegal. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment [of an issue] with little or no citation of supporting authority." *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998). Consequently, we decline to address his contention that the arrest or the search were illegal. Further, without first establishing that the arrest and search were illegal, Bogard cannot prove that his lawyer was deficient in failing to move to suppress evidence or by failing to establish that his arrest was illegal. See *Carbin*, 463 Mich at 600 (stating that to succeed on a claim of ineffective assistance, a defendant must establish the factual predicate for his or her claim).

Next, to the extent that Bogard argues that his lawyer provided ineffective assistance by subjecting him to the court's jurisdiction when she "appeared" before the trial court, we find his argument wholly without merit. The trial court had jurisdiction over Bogard. See *People v Lown*, 488 Mich 242, 268; 794 NW2d 9 (2011) ("Michigan circuit courts are courts of general jurisdiction and unquestionably have jurisdiction over felony cases.").

> Finally, Bogard argues that the cumulative effect of his trial lawyer's errors resulted in an unconstitutional deprivation of his right to the effective assistance of a lawyer. There cannot be cumulative error, however, in the absence of any errors. Stated differently, we cannot reverse on the basis of cumulative error when no errors have been presented. Thus, we reject Bogard's claim of ineffective assistance.
>
> [2] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

(Mich. Ct. App. Op., ECF No. 1, PageID.24-25.) Although the court of appeals did not directly cite *Strickland*, the state supreme court cases on which the appellate court relied themselves applied *Strickland*. *See People v. Carbin*, 623 N.W.2d 884, 889 (Mich. 2001); *People v. Solmonson*, 683 N.W.2d 761, 765 (Mich. Ct. App. 2004).

The court of appeals noted that Petitioner had failed to detail the bases for his search and seizure claims. The court therefore declined to address those claims on the merits. When a state-law procedural default prevents further state consideration of a federal issue, the federal courts ordinarily are precluded from considering that issue on habeas corpus review. *See Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991); *Engle v. Isaac*, 456 U.S. 107 (1982). To determine whether a petitioner procedurally defaulted a federal claim in state court, the Court must consider whether: (1) the petitioner failed to comply with an applicable state procedural rule; (2) the state court enforced the rule so as to bar the claim; and (3) the state procedural default is an "independent and adequate" state ground properly foreclosing federal habeas review of the federal constitutional claim. *See Hicks v. Straub,* 377 F.3d 538, 551 (6th Cir. 2004); *accord Lancaster*, 324 F.3d at 436-37; *Greer v. Mitchell*, 264 F.3d 663, 672 (6th Cir. 2001); *Buell v. Mitchell*, 274 F.3d 337, 348 (6th Cir. 2001). In determining whether a state procedural rule was applied to bar a claim, a reviewing court looks to the last reasoned state-court decision disposing of the claim. *See Ylst*, 501 U.S. at 803; *Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010).

The Michigan appellate courts long have held that, unless an appellant provides facts, citations, and arguments in support of the claim, it will be deemed abandoned. *People v. Coy*, 669 N.W.2d 831, 843 (Mich. Ct. App. 2003). The rule requiring development of appellate issues was well-established at the time of Petitioner's trial. *See, e.g.*, Mich. Ct. R. 7.212(C)(6)-(7) (setting forth requirements for appellate briefs, including the requirements of sufficient factual descriptions to understand the controversy and question involved and for arguments including supporting authorities); *Coy*, 669 N.W.2d at 843; *People v. Anderson*, 531 N.W.2d 780, 786 (Mich. Ct. App. 1995); *Froling v. Carpenter*, 512 N.W.2d 6, 9 (Mich. Ct. App. 1993). Petitioner's failure to comply with the state's independent and adequate state procedural rule, *i.e.*, developing his issue on appeal, caused him to default his claims in state court. *See Wainwright v. Sykes*, 433 U.S. 72, 86-88 (1977); *Taylor v. McKee*, 649 F.3d 446, 450 (6th Cir. 2011); *Awkal v. Mitchell*, 613 F.3d 629, 648 (6th Cir. 2010).

Where, as here, a habeas petitioner has procedurally defaulted his federal claim in state court, the petitioner must demonstrate either (1) cause for his failure to comply with the state procedural rule and actual prejudice flowing from the violation of federal law alleged in his claim, or (2) that a lack of federal habeas review of the claim will result in a fundamental miscarriage of justice. *See House v. Bell*, 547 U.S. 518, 536 (2006); *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Murray v. Carrier*, 477 U.S. 478, 495 (1986); *Hicks*, 377 F.3d at 551-52. The miscarriage-of-justice exception only can be met in an "extraordinary" case where a prisoner asserts a claim of actual innocence based upon new reliable evidence. *House*, 547 U.S. at 536. A habeas petitioner asserting a claim of actual innocence must establish that, in light of new evidence, it is more likely

than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt. *Id.* (citing *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).

Petitioner fails to raise any reason for his failure to comply with the procedural rule. Although ineffective assistance of appellate counsel may serve as cause to excuse a procedural default, such a claim itself must have been exhausted in the state courts. *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000); *Buell*, 274 F.3d at 349; *Coleman v. Mitchell*, 244 F.3d 533, 538 (6th Cir. 2001). Petitioner has never presented a claim of ineffective assistance of appellate counsel to any Michigan court. He therefore fails to show cause excusing his default. Where a petitioner fails to show cause, the court need not consider whether he has established prejudice. *See Engle v. Isaac*, 456 U.S. 107, 134 n.43 (1982); *Leroy v. Marshall*, 757 F.2d 94, 100 (6th Cir. 1985).

Petitioner also cannot excuse his default under the miscarriage-of-justice exception. Petitioner at no time has alleged actual innocence, much less shown by new evidence that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt. *House*, 547 U.S. at 536 (citing *Schlup*, 513 U.S. at 327). As a consequence, Petitioner has procedurally defaulted his claim that trial counsel was ineffective in failing to file a motion to suppress his arrest and the searches of the house and the car.

To the extent that Petitioner alleges that he should have received a *Ginther* hearing on his claims of ineffective assistance of counsel, he also has defaulted his claim. Petitioner at no time moved for a *Ginther* hearing,[1] and he made no factual representations about what he expected to show at that hearing. As the Michigan Supreme Court held in *Ginther*,

---

[1] In *People v. Ginther*, 212 N.W.2d 922 (Mich. 1973), the Michigan Supreme Court approved the process of remanding to the trial court for an evidentiary hearing when an appellant has raised claims of ineffective assistance of counsel that require development of a record. However, as the Michigan Supreme Court held in *Ginther*, "A defendant who wishes to advance claims that depend on matters not of record can properly be required to seek at the trial court level

A defendant who wishes to advance claims that depend on matters not of record can properly be required to seek at the trial court level an evidentiary hearing for the purpose of establishing his claims with evidence as a precondition to invoking the processes of the appellate courts except in the rare case where the record manifestly shows that the judge would refuse a hearing; in such a case the defendant should seek on appeal, not a reversal of his conviction, but an order directing the trial court to conduct the needed hearing.

212 N.W.2d at 925. Petitioner filed no motion in the trial court and made no factual showing to the court of appeals that would have warranted remand. The court of appeals therefore relied solely on the record in reaching its result.

Petitioner's failure to follow the procedural rules again is a default. The requirement of a motion has been well established since the issuance of *Ginther* in 1973. And, as with Petitioner's default of his failure to develop his search-and-seizure claim, Petitioner has alleged neither cause and prejudice nor miscarriage of justice to excuse the default.

With respect to the remaining findings of the court of appeals on Petitioner's claims of ineffective assistance of trial counsel, Petitioner makes no substantive argument. Indeed, in his argument in his application for leave to appeal to the Michigan Supreme Court, Petitioner concedes that the bases for his claims would not be found in the record. (*See* Appl. for Lv. to Appeal to Mich. Sup. Ct., ECF No. 1, PageID.45.)

That said, the Michigan Court of Appeals reasonably concluded that Petitioner had recited no facts that would support a favorable determination on either prong of the *Strickland* standard. Petitioner did not identify what any background investigation would have turned up;

---

an evidentiary hearing for the purpose of establishing his claims with evidence as a precondition to invoking the processes of the appellate courts except in the rare case where the record manifestly shows that the judge would refuse a hearing; in such a case the defendant should seek on appeal, not a reversal of his conviction, but an order directing the trial court to conduct the needed hearing." *Id.* at 925. Petitioner filed no motion in the trial court and made no factual showing to the court of appeals that would have warranted remand.

how that information would have affected the outcome of trial; or how the searches and arrest were improper. A court "cannot conclude that [] counsel was deficient solely on [the petitioner's] version." *See Fitchett v. Perry*, 644 F. App'x 485, 489 (6th Cir. 2016) (holding that "sheer speculation" of inadequate investigation does not state a claim). "It should go without saying that the absence of evidence cannot overcome the 'strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance.'" *Burt*, 571 U.S. at 23 (quoting *Strickland*, 466 U.S. at 689).

Further, with respect to Petitioner's argument that counsel was ineffective for failing to challenge the trial court's jurisdiction, the claim is not cognizable on habeas review. The determination of whether a state court is vested with jurisdiction under state law over a criminal case is a function of the state courts, not the federal courts. *Wills v. Egeler*, 532 F.2d 1058, 1059 (6th Cir. 1976). As the Court earlier discussed, a federal habeas court may not re-examine state-law determinations on state-law questions. *Bradshaw*, 546 U.S. at 76; *Estelle*, 502 U.S. at 68. The decision of the state courts on a state-law issue is binding on this Court. *See Wainwright*, 464 U.S. at 84; *Stumpf*, 722 F.3d at 746 n.6. Specifically, with regard to jurisdictional issues, the Sixth Circuit has stated that "a state court's interpretation of state jurisdictional issues conclusively establishes jurisdiction for purposes of federal habeas review." *Strunk v. Martin*, 27 F. App'x 473, 475 (6th Cir. 2001).

To the extent that Petitioner intends to argue that trial counsel was ineffective with respect to any of his other exhausted habeas grounds, his claim is meritless. Because Petitioner fails to demonstrate any error by counsel, Petitioner's claim that the various failures of counsel cumulated to deprive him of the effective assistance of counsel necessarily fails.

For all these reasons, Petitioner's fifth ground for habeas relief is either procedurally defaulted or without merit. Accordingly, he is not entitled to habeas relief.

## VIII. Motion for Stay & Abeyance

Petitioner has filed a motion to stay the petition and hold it in abeyance while Petitioner raises a new claim that trial counsel was ineffective in failing to investigate and discover eyewitness Frances Perez, who would challenge the credibility of Siad Brown, the prosecutor's chief witness.

Petitioner attaches an affidavit from Ms. Perez, as well as his own affidavit. In her affidavit (ECF No. 8-1, PageID.24-25), signed on October 24, 2019, Perez avers that Petitioner originally was on the front porch when Siad Brown challenged him to a fight. Petitioner came off the porch to confront Brown about his behavior. According to Perez, she then asked Petitioner to come into the house and wait while she helped Shawntay Williams (Brown's girlfriend) get some things to wear, because Williams planned to go to Perez's house. While she was packing, Perez heard a knock at the door. She and Williams approached the door, and she noticed that it was the Grand Rapids police, who advised them that the police had received a report of gun shots fired. Williams gave the officers permission to come into the house. Perez witnessed the officers handcuff Petitioner. Perez avers that she told the officers that it was Brown who was walking around the house with a gun in his waistband and that Perez had been the one to ask Petitioner to come over to the house to pick her up. Perez avers that, despite giving the officers her information, she never was contacted by the prosecution or the defense. Perez claims that she was available and would have testified had she been asked. (*Id.*)

In his affidavit, Petitioner asserts that he informed both trial counsel and appellate counsel about witness Perez, who could confirm Petitioner's story that it was Brown who was

30

walking around with the gun. (Pet'r's aff., ECF No. 8-1, PageID.26-28.) Petitioner avers that, despite his awareness of Perez as a potential witness, trial counsel failed to contact her and produce her at trial. He also avers that he asked his appellate attorney to investigate the issue before preparing the appeal, but she refused to do so. (*Id.*)

Before the Court may grant habeas relief to a state prisoner, the prisoner must exhaust remedies available in the state courts. 28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). Exhaustion requires a petitioner to "fairly present" federal claims so that state courts have a "fair opportunity" to apply controlling legal principles to the facts bearing upon a petitioner's constitutional claim. *Id.* at 844, 848; *see also Picard v. Connor*, 404 U.S. 270, 275-77 (1971); *Duncan v. Henry*, 513 U.S. 364, 365 (1995); *Anderson v. Harless*, 459 U.S. 4, 6 (1982). To fulfill the exhaustion requirement, a petitioner must have fairly presented his federal claims to all levels of the state appellate system, including the state's highest court. *O'Sullivan*, 526 U.S. at 845; *Wagner v. Smith*, 581 F.3d 410, 414 (6th Cir. 2009); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990). The district court can and must raise the exhaustion issue *sua sponte* when it clearly appears that habeas claims have not been presented to the state courts. *See Prather v. Rees*, 822 F.2d 1418, 1422 (6th Cir. 1987); *Allen v. Perini*, 424 F.2d 134, 138-39 (6th Cir. 1970).

Petitioner bears the burden of showing exhaustion. *See Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994). As discussed earlier in this petition, Petitioner's first five grounds for habeas relief were fully exhausted in the state courts. Petitioner acknowledges that his new claim of ineffective assistance of counsel has never been presented at any level of the state courts.

An applicant has not exhausted available state remedies if he has the right under state law to raise, by any available procedure, the question presented. 28 U.S.C. § 2254(c).

Petitioner requests an opportunity to exhaust his new claim by filing a motion for relief from judgment under Mich. Ct. R. 6.500 *et seq.* Under Michigan law, one such motion may be filed after August 1, 1995. Mich. Ct. R. 6.502(G)(1). Petitioner has not yet filed his one allotted motion. Therefore, the Court concludes that he has at least one available state remedy. To properly exhaust his claim, Petitioner would have to file a motion for relief from judgment in the Kent County Circuit Court. If his motion subsequently is denied by the circuit court, Petitioner would be required to appeal that decision to the Michigan Court of Appeals and the Michigan Supreme Court. *O'Sullivan,* 526 U.S. at 845; *Hafley,* 902 F.2d at 483 ("'[P]etitioner cannot be deemed to have exhausted his state court remedies as required by 28 U.S.C. § 2254(b) and (c) as to any issue, unless he has presented that issue both to the Michigan Court of Appeals and to the Michigan Supreme Court.'") (citation omitted).

But the addition of Petitioner's proposed new claim would result in a petition containing some claims that are exhausted and some that are not; in other words, his petition would be "mixed." Under *Rose v. Lundy*, 455 U.S. 509, 522 (1982), district courts are directed to dismiss mixed petitions without prejudice in order to allow petitioners to return to state court to exhaust remedies. However, since the habeas statute was amended to impose a one-year statute of limitations on habeas claims, *see* 28 U.S.C. § 2244(d)(1), dismissal without prejudice often effectively precludes future federal habeas review. This is particularly true after the Supreme Court ruled in *Duncan v. Walker*, 533 U.S. 167, 181-82 (2001), that the limitations period is not tolled during the pendency of a federal habeas petition. As a result, the Sixth Circuit adopted a stay-and-abeyance procedure to be applied to mixed petitions. *See Palmer v. Carlton*, 276 F.3d 777, 781 (6th Cir. 2002). In *Palmer*, the Sixth Circuit held that when the dismissal of a mixed petition could jeopardize the timeliness of a subsequent petition, the district court should dismiss only the unexhausted claims and stay further proceedings on the remaining portion until the

petitioner has exhausted his claims in the state court. *Id.*; *see also Rhines v. Weber*, 544 U.S. 269, 277 (2007) (approving stay-and-abeyance procedure); *Griffin v. Rogers*, 308 F.3d 647, 652 n.1 (6th Cir. 2002).

Petitioner's application is subject to the one-year statute of limitations provided in 28 U.S.C. § 2244(d)(1). Under that provision, the one-year limitations period runs from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). The Michigan Supreme Court denied leave to appeal on December 4, 2018. Petitioner did not file a petition for certiorari to the United States Supreme Court. The one-year limitations period, however, did not begin to run until the ninety-day period in which Petitioner could have sought review in the United States Supreme Court had expired. *See Lawrence v. Florida*, 549 U.S. 327, 332-33 (2007); *Bronaugh v. Ohio*, 235 F.3d 280, 283 (6th Cir. 2000). The ninety-day period expired on March 4, 2019. Accordingly, absent tolling, Petitioner would have had one year, until March 4, 2020, in which to file a habeas petition raising his new claim.

Petitioner mailed his original petition in this case on December 11, 2019, when he still had 83 days remaining in his limitations period. However, he did not mail his motion for a stay to exhaust his new issue until March 10, 2020, nearly a week after his limitations period had expired.[2]

---

[2] Petitioner alleges that he mailed his motion for stay and abeyance to the Eastern District of Michigan on January 13, 2020. The records of both the Eastern District of Michigan and this Court contain no such filing. As evidence of his prior attempt to file his motion, Petitioner purports to attach a copy of the original motion to his current motion. (*See*, ECF No. 8-1, PageID.8.) However, both the cover letter to the Eastern District of Michigan and the attached motion are dated the same as his current motion, March 10, 2020, thus undercutting his claim. (*See* ECF No. 8-1, PageID.15, 22.) The record therefore belies Petitioner's claim to have filed his motion earlier than March 10, 2020.

"'[W]hen a prisoner files an original petition within the one-year deadline, and later presents new claims in an amended petition filed after the deadline passes, the new claims relate back to the date of the original petition if the new claims share a 'common core of operative facts' with the original petition.'" *Cowan v. Stovall*, 645 F.3d 815, 818 (6th Cir. 2011) (quoting *Mayle v. Felix*, 545 U.S. 644, 650 (2005)); *see* 28 U.S.C. § 2242 (providing that habeas applications "may be amended . . . as provided in the rules of procedure applicable to civil actions"). Rule 15(c)(1) provides that an amendment relates back when it "asserts a claim . . . that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading[.]" If a petition raises a new claim that does *not* relate back, however, AEDPA's statute of limitations bars consideration of the new claim. *Mayle*, 545 U.S. at 656-57.

In *Mayle*, the Supreme Court rejected the proposition that an amended petition asserting new habeas claims relates back simply because the new claims arise from the same "trial, conviction, or sentence" as the original petition. *Id.* at 663-64. The Court noted that "the key words [in Rule 15(c)(1)] are 'conduct, transaction, or occurrence,'" and that the rule "relaxes, but does not obliterate, the statute of limitations." *Id.* at 656, 659 (quoting Rule 15(c)). The Court explained that "relation back depends on the existence of a common 'core of operative facts' uniting the original and newly asserted claims." *Id.* at 659. Applying relation back for any trial, conviction, or sentence, the Court concluded, was too broad a rule, as it would allow "virtually any new claim introduced in an amended petition [to] relate back[] for federal habeas claims." Id. at 657. Instead, the court held that "[a]n amended habeas petition does not relate back (and thereby escape AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those in the original pleading." *Id.* at 650, 663 (rejecting an "unconstrained reading" of Rule 15(c)(1)).

The Court also explained that an overly broad relation-back doctrine would contravene Congress's intent in enacting AEDPA "to the finality of criminal convictions." *Id.* at 661 (citing *Rhines*, 544 U.S. at 276 (2005)). That is, Congress intentionally "adopted a tight time line, a one-year limitation period," and "[i]f claims asserted after the one-year period could be revived simply because they relate to the same trial, conviction, or sentence as a timely filed claim, AEDPA's limitation period would have slim significance." *Id.* at 662.

Here, Petitioner asserts an entirely new claim of ineffective assistance of trial and appellate counsel. Although Petitioner, in his initial petition, raised general claims of ineffective assistance of counsel, including a claim that his attorney "fail[ed] to prepare," he made no claim that his attorney failed to investigate or produce Ms. Perez at trial—a witness Petitioner knew and whose presence Petitioner was aware of at the time of the offense.

Further, even assuming that Petitioner intended to raise such a claim on appeal, Petitioner provided no specifics about his claim in the Michigan appellate courts. As discussed earlier in this opinion, the lack of development and support for his ineffective-assistance-of-counsel claim resulted in his procedural default of that claim. As a result, even were the Court to conclude that the new claim related back, Petitioner would be barred from pursuing his claim by his earlier procedural default. His proposed amendment to the petition therefore is untimely under § 2244(d)(1)(A).

Petitioner's habeas application also is time-barred when analyzed under § 2244(d)(1)(D). That section provides that the period of limitations runs from "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." *Id.* Under § 2244(d)(1)(D), the time under the limitations period begins to run is when a petitioner knows, or through due diligence, could have discovered, the important facts for his claims, not when the petitioner recognizes the legal significance of the facts. *See*

*Redmond v. Jackson*, 295 F. Supp. 2d 767, 771 (E.D. Mich. 2003) (citing *Owens v. Boyd*, 235 F.3d 356, 359 (7th Cir. 2000). "The question under the provision is not when prisoners first learned of the new evidence; it is when they should have learned of the new evidence had they exercised reasonable care." *Townsend v. Lafler*, 99 F. App'x 606, 608 (6th Cir. 2004). Section 2244(d)(1)(D) "does not convey a statutory right to an extended delay while a petitioner gathers every possible scrap of evidence that might support his claim. *Id.* (quoting *Sorce v. Artuz*, 73 F. Supp. 2d 292, 294-95 (E.D.N.Y. 1999))." *Id.* "Rather, it is the actual or putative knowledge of the pertinent facts of a claim that starts the clock running on the date on which the factual predicate of the claim could have been discovered through due diligence, and the running of the limitations period does not await the collection of evidence which supports the facts, including supporting affidavits." *Id.* (citing *Tate v. Pierson*, 177 F. Supp. 2d 792, 800 (N.D. Ill. 2001), and *Flanagan v. Johnson*, 154 F.3d 196, 198-99 (5th Cir. 1998)). Furthermore, a habeas petitioner has the burden of proof in establishing that he exercised due diligence in searching for the factual predicate of the habeas claims. *Stokes v. Leonard*, 36 Fed. Appx. 801, 804 (6th Cir. 2002). Unsupported and conclusory arguments are insufficient to warrant application of § 2244(d)(1)(D). *Redmond*, 295 F. Supp. 2d at 772; *Grayson v. Grayson*, 185 F. Supp. 2d 747, 750-51 (E.D. Mich. 2002) (holding that a petitioner does not show how the factual predicate could not have been discovered earlier if he fails to indicate the steps he took to discover the claims). The key to deciding whether evidence is 'newly discovered' or only 'newly available' is to ascertain when the defendant found out about the information at issue." *United States v. Turns*, 198 F.3d 584, 587 (6th Cir. 2000).

Here, although Perez only signed her affidavit on October 24, 2019, Petitioner knew Perez before he was arrested and knew that Perez was present in the home that evening. Indeed, Petitioner claims that he told his trial and appellate attorneys to contact her. Given this knowledge,

Petitioner cannot demonstrate that Perez's affidavit amounts to newly discovered evidence within the meaning of § 2244(d)(1)(D).

Although Petitioner's new claim is not timely under either § 2244(d)(1)(A) or (D), the one-year limitations period is subject to equitable tolling. *See Holland v. Florida*, 560 U.S. 631, 645 (2010); *Akrawi v. Booker*, 572 F.3d 252, 260 (6th Cir. 2009); *Keenan v. Bagley*, 400 F.3d 417, 420 (6th Cir. 2005). A petitioner bears the burden of showing that he is entitled to equitable tolling. *See Keenan*, 400 F.3d at 420; *Allen v. Yukins*, 366 F.3d 396, 401 (6th Cir. 2004). The Sixth Circuit repeatedly has cautioned that equitable tolling should be applied "sparingly" by this Court. *See Hall v. Warden, Labanon Corr. Inst.*, 662 F.3d 745, 749 (6th Cir. 2011); *Robertson v. Simpson*, 624 F.3d 781, 784 (6th Cir. 2010); *Sherwood v. Prelesnik*, 579 F.3d 581, 588 (6th Cir. 2009). A petitioner seeking equitable tolling of the habeas statute of limitations has the burden of establishing two elements: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Holland*, 560 U.S. at 649 (citing *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)); *Lawrence*, 549 U.S. at 335; *Hall*, 662 F.3d at 749-50; *Akrawi*, 572 F.3d at 260.

Petitioner, however, cannot demonstrate the requisite diligence. Petitioner was fully aware of Ms. Perez as a witness and of her ability to give favorable testimony. Although Petitioner blames his attorneys for failing to produce Ms. Perez at trial and failing to raise a claim of ineffective assistance of counsel on appeal concerning that failure, Petitioner himself failed to bring the issue to the Michigan courts in a timely fashion. Petitioner filed a pro per supplemental brief in the Michigan Court of Appeals, in accordance with Michigan Supreme Court Administrative Order 2004-6. In his brief, Petitioner raised claims of ineffective assistance of counsel, but he utterly failed to identify the potential testimony of Ms. Perez. (*See* Mich. Ct. App. Op., ECF No. 1, PageID.24-25.) He also made no mention of Ms. Perez in his application for

leave to appeal to the Michigan Supreme Court, despite arguing that counsel was ineffective.  (*See*, Pet'r's Appl. for Leave to Appeal, ECF No. 1, PageID.45-46.)  In addition, during the year between the Michigan Supreme Court's denial of his application for leave to appeal and Petitioner's filing of his habeas petition, Petitioner made no attempt to exhaust his claim, despite his knowledge of Ms. Perez.  Because he failed to exercise diligence in presenting his claim, Petitioner is not entitled to equitable tolling of the statute of limitations.

Alternatively, Petitioner may intend to suggest that he is entitled to tolling of the statute of limitations because Ms. Perez's affidavit suggests that he is actually innocent of the offense.  In *McQuiggin v. Perkins*, 569 U.S. 383, 392-93(2013), the Supreme Court held that a habeas petitioner who can show actual innocence under the rigorous standard of *Schlup v. Delo*, 513 U.S. 298 (1995), is excused from the procedural bar of the statute of limitations under the miscarriage-of-justice exception.  In order to making a showing of actual innocence under *Schlup*, a Petitioner must present new evidence showing that "'it is more likely than not that no reasonable juror would have convicted [the petitioner].'"  *McQuiggin*, 569 U.S. at 399 (quoting *Schlup*, 513 U.S. at 329) (addressing actual innocence as an exception to procedural default)).  Because actual innocence provides an exception to the statute of limitations rather than a basis for equitable tolling, a petitioner who can make a showing of actual innocence need not demonstrate reasonable diligence in bringing his claim, though a court may consider the timing of the claim in determining the credibility of the evidence of actual innocence.  *Id.* at 399-400.

Although Perez's affidavit provides some evidence to impeach prosecution's witnesses Brown and Williams, it falls short of showing that he is actually innocent under the demanding *Schlup* standard.  At best, it presents a question a fact on some points of testimony. Further, the affidavit does not address the firing of shots, nor does it dispute the evidence concerning Petitioner's location in the house when the police arrived or dispute the facts that

Petitioner possessed a large sum of money and had drug paraphernalia in his vehicle. Under these circumstances, Petitioner fails to show that "'it is more likely than not that no reasonable juror would have convicted [the petitioner].'" *McQuiggin*, 569 U.S. at 399 (quoting *Schlup*, 513 U.S. at 329).

Finally, even if Petitioner's proposed new claim were deemed timely for any reason, Petitioner would not be entitled to a stay for the purposes of exhaustion. As previously discussed, the Supreme Court has held that the type of stay-and-abeyance procedure set forth in *Palmer* should be available only in limited circumstances because over-expansive use of the procedure would thwart the AEDPA's goals of achieving finality and encouraging petitioners to first exhaust all of their claims in the state courts. *See Rhines v. Weber*, 544 U.S. 269, 277 (2005). A district court contemplating stay and abeyance should only stay the mixed petition pending exhaustion of state remedies if there is "good cause" for the petitioner's failure to exhaust, if the petitioner's unexhausted claims are not "plainly meritless" and if there is no indication that the petitioner engaged in "intentionally dilatory litigation tactics." *Id.* at 278.

Here, Petitioner cannot demonstrate good cause for his failure to exhaust his new claim prior to filing his habeas petition. As earlier discussed, Petitioner was fully aware of Ms. Perez as a witness at the time of trial; he failed to raise the issue, despite filing pro per briefs in the Michigan Court of Appeals and the Michigan Supreme Court; and he made no attempt to exhaust his claim in the year between the supreme court's decision and the filing of his petition in this Court. and of her ability to give favorable testimony. Petitioner's failures undermine a claim of good cause to excuse his failure to exhaust.

For all these reasons, Petitioner's motion to stay the petition and hold it in abeyance will be denied.

## IX.     Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted.  A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right."  28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability.  *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted.  *Id.*  Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000).  *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Id.*  "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims.  *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong.  Therefore, the Court will deny Petitioner a certificate of appealability.  Nevertheless, although Petitioner has failed to demonstrate that he is in custody in violation of the Constitution and has failed to make a substantial showing of the denial of a constitutional right, the Court does not conclude that any issue Petitioner might raise on appeal would be frivolous.  *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

## **Conclusion**

The Court will enter a judgment dismissing the petition and an order denying Petitioner's motion to stay the petition and denying a certificate of appealability.


Dated:   March 26, 2020                          /s/ Paul L. Maloney
                                                 Paul L. Maloney
                                                 United States District Judge